**Keith L. PHILLIPS, Trustee for the Estate of Bernard Lee Bottoms and Kathy Stilley Bottoms, Appellant,**

**v.**

**Bernard Lee BOTTOMS and Kathy Stilley Bottoms, Appellees.**

**No. CIV. A. 3:99CV287.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 15, 2000.

---

Kevin R. Huennekens, Patricia L. Phillips, Maloney, Huennekens, Parks, Gecker & Parsons, Richmond, VA, for Appellant.

William C. Parkinson, Jr., Richmond, VA, for Appellees.

## MEMORANDUM OPINION

PAYNE, District Judge.

This appeal was prompted by a decision of the Bankruptcy Court which overruled in part, and sustained in part, the trustee's objections to the debtors' claim that an interest in an investment retirement account ("IRA") was exempt from inclusion in the bankrupt estate. Keith L. Phillips, trustee ("the Trustee") for Bernard Lee Bottoms and Kathy Stilley Bottoms ("the Debtors"), seeks reversal of the Bankruptcy Court's decision that section 34–34 of the Virginia Code is not preempted by the Employee Retirement Income Security Act (ERISA). In their cross-appeal, the Debtors seek reversal of the Bankruptcy Court's decision that Mr. Bottoms' IRA is property of the Debtors' estate.

### STATEMENT OF FACTS

The Debtors filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. On Schedule B to their bankruptcy petition, the Debtors listed Mr. Bottoms' interest in an IRA, in the amount of $48,857.88, as an asset of the estate. On June 11, 1998, the date of the creditors' meeting, the Debtors filed an Amended Schedule C to their bankruptcy petition in which they set aside Mr. Bot-

toms' entire interest in the IRA as exempt from the property of the estate. In the alternative, the Debtors declared their intention to exempt an interest in the IRA up to $21,532.00 pursuant to section 34–34 of the Virginia Code.

On June 15, 1998, each of the Debtors filed a Homestead Deed for Real or Personal Property with the Circuit Court of Chesterfield County in which the IRA was listed as exempt. It is undisputed that the IRA is not an ERISA-qualified plan. However, because the Debtors used funds from an ERISA-qualified plan to create the IRA, the Debtors contend that the exemption applicable to an ERISA-qualified plan exempts the IRA because it was created by funds having their origin in such a plan.

The Trustee objected to the claim of exemption for the IRA. After the Debtors answered the objection, the Bankruptcy Court held a nearing at which neither documentary nor testimonial evidence was taken because the material facts were not in dispute. At the conclusion of the hearing, the Bankruptcy Court held that the IRA was property of the bankrupt estate and that section 34–34 of the Virginia Code is not preempted by ERISA. The Bankruptcy Court supplemented its oral bench ruling in a written opinion holding that: (1) Mr. Bottoms' interest in the IRA was property of the estate under section 541(a)(1) of the Bankruptcy Code; and (2) the Debtors' claimed exemption, pursuant to section 34–34 of the Virginia Code, should be allowed in the amount of $21,532.00.

The Trustee filed a notice appealing the Bankruptcy Court's determination that section 34–34 of the Virginia Code is not preempted by ERISA. The Debtors filed a cross-appeal from the Bankruptcy Court's decision that the IRA is property of the estate.

## DISCUSSION

■ Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a district court shall not set aside a Bankruptcy Court's findings of fact unless they are clearly erroneous. *See* Fed. R. Bankr.P. 8013. The facts in this case are not in dispute. Conclusions of law, however, are subject to de novo review. *See In re Stanley,* 66 F.3d 664 (4th Cir.1995). Hence, that standard governs the assessment of the issues on which the appeal and the cross-appeal turn.

### I. Mr. Bottoms' Interest in the IRA is Property of the Debtors' Estate

■ For the reasons set forth below, the Bankruptcy Court's determination that the IRA funds are property of the bankrupt estate is affirmed.

The analysis of this issue proceeds from the clear precept that the commencement of a bankruptcy case creates an estate that is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case ... wherever located or by whomever held." 11 U.S.C. § 541(a)(1). The fundamental principle was limited, of course, by the decision in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), wherein the Supreme Court of the United States held that, pursuant to 11 U.S.C. § 541(c)(2), a debtor's interest in an ERISA-qualified retirement plan is excluded from the property of a bankruptcy estate.

The "property of the estate" issue presented here is animated by the undisputed fact that Mr. Bottoms' IRA was established with funds that were transferred from an ERISA-qualified plan. The Debtors argue that those funds retained the exempt status which they enjoyed under

*Patterson,* notwithstanding that the IRA to which they were transferred is not an ERISA-qualified plan.

The Debtors' argument must be measured against the decision in *Tenneco, Inc. v. First Virginia Bank,* 698 F.2d 688 (4th Cir.1983), in which the Fourth Circuit explained that funds drawn from an ERISA-qualified plan are not "forever immune from attachment by creditors." *Id.* at 691. *Patterson,* of course, was decided after *Tenneco,* but, as correctly explained in *In re Ekanger,* No. 99–10571–SSM, 1999 WL 671866, *2 (Bankr.E.D.Va. May 17, 1999) (citing *In re Caslavka,* 179 B.R. 141, 143 (Bankr.N.D.Iowa 1995)), "nothing in *Patterson* even remotely suggests that once funds are withdrawn from an ERISA-qualified plan, they would thereafter remain immune from the claims of creditors."

ERISA provides that: "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The Debtors point out, and correctly so, that this anti-alienation provision in ERISA prevents an ERISA-qualified plan from becoming part of a debtor's estate. This, they say, means that funds transferred from an ERISA-qualified account to a non-qualified IRA can never constitute property of a bankrupt estate. That, however, reads too much into ERISA's anti-alienation provision, and it also is inconsistent with *Tenneco's* central tenet that funds removed from an ERISA-qualified plan are not immune from the claims of creditors. Indeed, as the Bankruptcy Court noted in *Ekanger,* "ERISA contains no language imposing an anti-alienation requirement on funds withdrawn from a qualified plan or rolled-over to a tax-qualified IRA .... Accordingly, an IRA—even one funded by roll-over from an ERISA-qualified pension plan—is property of the bankruptcy estate." *Ekanger,* 1999 WL

671866, *2; *see also In re Johnston,* 218 B.R. 813, 817 (Bankr.E.D.Va.1998) (holding that once funds from an ERISA-qualified account are disbursed, "they will lose their exempt nature and become property of the estate").

For the foregoing reasons, the Bankruptcy Court correctly held that the IRA was property of the Debtors' estate. Accordingly, its decision on that issue is affirmed.

## II. Section 34–34 of the Virginia Code Is Saved From Preemption By Section 514(d) Of ERISA

■ In the Bankruptcy Court, the Debtors contended that, even if Mr. Bottoms' IRA was property of the estate, they were entitled nonetheless to exempt part of the IRA from the claims of their creditors by virtue of section 34–34 of the Virginia Code. In pertinent part, the statute provides:

"Alternate payee" shall have the same meaning as provided under § 206 of the Employee Retirement Income Security Act of 1974 (ERISA). In the case of a retirement plan that is not subject to ERISA, the term "alternate payee" means an individual who has an interest in a retirement plan pursuant to a judgment, decree, or order, including approval of a property settlement agreement, that would be described in § 206(d)(3)(B) of ERISA if the retirement plan were subject to ERISA.

Va.Code § 34–34(A). The Trustee sought to thwart the claim of partial exemption by arguing that section 34–34 of the Virginia Code was preempted by ERISA and therefore was not available to protect any part of the IRA from the claims of creditors. The Bankruptcy Court held that the Virginia statute was not preempted because it did "not conflict with ERISA either directly or indirectly." *In re Bot-*

*toms,* No. 98–33413–T (Bankr.E.D.Va. March 2, 1999), mem. op. at 6. That conclusion proceeded from the premise that:

Virginia Code § 34–34 neither acts immediately and exclusively upon an employee benefit plan under ERISA nor is the existence of ERISA plans essential to section 34–34's operation. ERISA serves a mere definitional purpose for the Virginia exemption and is thus not preempted by ERISA.

*Id.* And then, the Bankruptcy Court allowed $21,532.00 of the $43,857.88 interest in the IRA because the parties had agreed that, if an exemption was allowable at all, that was the correct amount. *Id.* at 7 n. 6.

The result reached by the Bankruptcy Court on the preemption issue is correct. But, there is somewhat more about preemption here that ought to be said.

### A. ERISA Preemption As Affected By ERISA's Savings Clause

The assessment of this issue begins, of course, with ERISA's broad express preemption clause which provides that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court explained that "[a] law 'relates to' an employee benefit plan in the normal sense of the phrase, if it has [1] a connection with or [2] reference to such a plan." It is the Trustee's position, based on *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 829–30, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), that section 34–34 of the Virginia Code is preempted because, like the Georgia law at issue in *Mackey,* the Virginia statute singles out a benefit plan for treatment different than that to which it is entitled under ERISA. This argument springs from the fact that sec-

tion 34–34 of the Virginia Code makes reference to ERISA by incorporating into the Virginia statute the definition of "alternate payee" from ERISA and by defining "retirement plan" with reference to the requirements for retirement plans spelled out in ERISA. For this reason, the Trustee argues that section 34–34 of the Virginia Code.

The Trustee's position, however, ignores the clarification of *Mackey* made by the Supreme Court in *California Div. of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). Specifically, in *Dillingham Construction,* the Supreme Court held that:

Where a State's law acts immediately and exclusively upon ERISA plans, as in *Mackey,* or where the existence of ERISA plans is essential to the [State] law's operation, as in *Greater Washington Bd. of Trade* and *Ingersoll–Rand,* that "reference" will result in pre-emption.

*Dillingham Construction,* 519 U.S. at 324–25, 117 S.Ct. 832.

Relying on *Dillingham Construction,* the Bankruptcy Court concluded that section 34–34 of the Virginia Code did not qualify under either of the two "reference" prongs of *Dillingham Construction* because "ERISA serves a mere definitional purpose for the Virginia exemption and is thus not preempted by ERISA." *Bottoms,* mem. op. at 6. Although it did not do so explicitly, the Bankruptcy Court appears to have been substantially influenced in reaching that decision by the Supreme Court's admonition in *Dillingham Construction* that " 'uncritical literalism' in applying [the preemption] standard offer[s] scant utility in determining Congress' intent as to the extent of § 514(a)'s reach." *Dillingham Construction,* 519 U.S. at 325, 117 S.Ct. 832 (citing *N.Y. Conf. of Blue*

Cross & Blue Shield Plans v. Travelers Ins., 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). For that reason, the Bankruptcy Court held that the mere reference to ERISA in the Virginia statute was insufficient to require preemption because a strict interpretation of that sort would mean "that a debtor in Virginia could never exempt retirement funds that were not ERISA-qualified from the assets of the estate. This result would severely hamper a debtor's fresh start and could scarcely have been intended by the Virginia legislature." Bottoms, mem. op. at 5–6 n. 4.

■ Although the Bankruptcy Court's analysis is correct, it must be assessed in perspective of the fact that ERISA's broad preemption clause is substantially limited by the so-called "savings clause" of ERISA's preemption provision. Specifically, the savings clause provides that ERISA's preemption provision "shall not be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d) (which is also referred to as section 514(d) of ERISA).[1]

■ The reach of ERISA's savings clause was expanded by the Supreme Court's decision in Shaw v. Delta Air Lines, Inc. wherein the Court held that section 514(d) also saves from preemption state laws which enforce federal legislation. Specifically, in Shaw, the Court considered whether preemption of New York's fair employment law would impair or modify Title VII because of the significant role which Congress gave to state laws in enforcing Title VII. The Supreme Court held that preemption "would frustrate the goal of encouraging joint state/federal enforce-

ment of Title VII" and then concluded that "[s]uch a disruption of the enforcement scheme contemplated by Title VII would, in the words of § 514(d), 'modify' and 'impair' federal law." Shaw, 463 U.S. at 102, 103 S.Ct. 2890. Of course, the Court clearly limited the reach of its decision to provisions of the New York law which were consistent with Title VII, explaining that section 514(d) would not save from preemption state laws that prohibit conduct permitted by Title VII. Id. at 103, 103 S.Ct. 2890.

After Shaw was decided, four Courts of Appeals have been called upon to decide whether section 514(d) operates to save from preemption state exemption laws (similar to section 34–34 of the Virginia Code) which otherwise would have been preempted by ERISA by virtue of the fact that they were in some way related to ERISA. Three circuits, the Fifth, Eighth and Eleventh, have held that section 514(d) saves such laws from ERISA preemption, while the Ninth Circuit has reached the opposite conclusion.

**B. The Place Of State Laws, Such As Section 34–34 Of The Virginia Code, In The United States Bankruptcy Code**

Before examining these decisions, it is helpful to keep in mind how section 34–34 of the Virginia Code operates in the context of the federal bankruptcy law. The recent decision in In re Gurry, 253 B.R. 406 (Bankr.E.D.Va.2000), more than adequately disposes of that task; and, therefore, the explanation given there bears repeating. First, as the court in Gurry noted by way of background:

Under § 541, Bankruptcy Code, the filing of a bankruptcy petition creates an

---

1. Most decisions respecting the savings clause refer to section 514(d) of ERISA rather than 29 U.S.C. § 1144(b). Therefore, all refer-

ences in this Memorandum Opinion to the savings clause will be to section 514(d).

"estate" composed of all legal and equitable interests of the debtor in property. An individual debtor, however, may "exempt from property of the estate"—and thus retain, free from the claims of the trustee and most creditors—either the property specified in § 522(d), Bankruptcy Code ("the Federal exemptions"), or, alternatively, the exemptions allowable under state law and general (nonbankruptcy) Federal law. § 522(b), Bankruptcy Code. A state is permitted, however, to "opt out" of allowing its residents to take advantage of the Federal exemptions. § 522(b)(1), Bankruptcy Code. Virginia has opted out, with the result that residents of Virginia filing bankruptcy petitions may claim only those exemptions allowable under Virginia law and general (nonbankruptcy) Federal law.

*Gurry*, 253 B.R. at 409 (citations omitted).

Clearly then, section 522 of the Bankruptcy Code contemplates that state laws have a central role in defining applicable exemptions to be made in protecting property of the estate from the reach of the claims of creditors. In *Gurry*, the Bankruptcy Court explained the relationship between the state law and the fact of federal preemption. That discussion is a most helpful aid here:

> Accordingly [because of federal preemption], the entire amount of an ERISA-qualified retirement plan is protected from creditor process, notwithstanding that a state statute might provide only a partial exemption. What Congress has given, the states plainly cannot take away. However, it does not follow that the states cannot take into account what Congress has given in determining what state law benefits to extend, so long as the state statute does not burden or

infringe upon the Federal statutory scheme [citing cases explaining that ERISA does not preempt state law actions which affect employment benefit plans in tenuous, remote or peripheral matters]. In this connection, Section 34–34 merely ensures that a financially unfortunate debtor is able to protect at least some portion of a tax-qualified retirement plan, even if the plan is not ERISA-qualified. While the statute cannot limit or burden the protections afforded by ERISA, it can protect, to what ever extent the state deems appropriate, retirement plans that do not come within ERISA'S scope, such as individual retirement accounts.

*Id.* at 411–12 (citing *Patterson*, 504 U.S. at 763, 112 S.Ct. 2242).

The treatment accorded the issue in *Gurry*, of course, amounts to the finding that section 34–34 is not preempted. And, of particular note, is the part of that thoughtful analysis which supports the unarticulated premise that nothing in section 34–34 of the Virginia Code conflicts with ERISA.[2]

As remarked above, four circuits have determined how ERISA's savings clause operates as to State exemption laws like Virginia's statute. To those decisions we now turn.

In 1991, in *In re Dyke*, 943 F.2d 1435 (5th Cir.1991), the Fifth Circuit held that, although a Texas law providing debtors with an exemption to receive payments under any stock bonus, pension, profit-sharing, or similar plan was theoretically preempted by ERISA because it related to ERISA, that state law was "saved" by section 514(d) preemption. Applying the Supreme Court's reasoning in *Shaw*, the Fifth Circuit analogized the Bankruptcy

---

**2.** Of course, were there such a conflict, the analysis would have to be significantly different. However, there is no such conflict for the reasons explained in *Gurry*.

Code to Title VII, noting that both federal statutes rely significantly or state law to assist in the implementation and enforcement of their goals. *See Dyke*, 943 F.2d at 1449. After observing that "[t]he principal goal of the Bankruptcy Code is to ensure that a debtor comes out of bankruptcy with adequate possessions to have a 'fresh start,'" *id.* (citing H.R.Rep. No. 95–595, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6087), the Fifth Circuit emphasized that, because circumstances pertaining to the achievement of that goal are "different in the various states, the Code also 'permits the states to set exemption levels appropriate to the locale.'" *Id.* The result of preemption would be to relegate many debtors in Texas to "a federal exemption scheme which might be inappropriate to the locale[,]" and that, according to the Court, would therefore modify and impair the Bankruptcy Code. *Id.* For that reason, the Fifth Circuit held that section 514(d) "saved" the Texas law from ERISA preemption.

Significantly, the court in *Dyke* noted the substantive differences between the exemptions provided in the Texas statute and those established in the federal bankruptcy statute,[3] but concluded those differences, although substantive, did not create an inconsistency between the state and federal laws. *See id.* at 1450 n. 40. As outlined above and in *Gurry*, the same is true here.

Just months after *Dyke*, in *In re Vickers*, 954 F.2d 1426 (8th Cir.1992), the Eighth Circuit, citing the savings clause in section 514(d), held that ERISA did not preempt a Missouri statute which allowed exemption of pension plan benefits from a bankruptcy estate. In a tersely worded opinion, the court noted that the Bankruptcy Code permits a debtor to exempt pension provisions from a bankruptcy estate to the extent necessary for support, 11 U.S.C. § 522(d)(10)(E), or, alternatively, allows the states to opt out of the federal scheme and to create their own exemptions. Because Missouri had enacted an exemption to pension plan benefits pursuant to the authority conferred by the Bankruptcy Code,[4] the Eighth Circuit held that the state law was saved from preemption. As is true in Virginia, Missouri had "opted-out" and its statutory exemptions, like those in section 34–34 of the Virginia Code, permitted debtors to exempt reasonably necessary pension benefits.

Less than two years after *Vickers*, the Eleventh Circuit joined the Fifth and Eighth Circuits, holding in *In re Schlein*, 8 F.3d 745 (11th Cir.1993) that a Florida exemption statute for "employee benefit plans" was not preempted by ERISA. After concluding that the Florida exemption was subject in concept to ERISA preemption under section 514(a), the Eleventh Circuit considered whether section 514(d) nonetheless saved the Florida law from preemption. In deciding that the Florida statute was saved under section 514(d), the court adopted the reasoning in *Dyke* and *Vickers*, while identifying what it considered to be flaws in the Ninth Circuit's contrary decision in *Pitrat v. Garlikov*, 947 F.2d 419 (9th Cir.1991), *withdrawn*, 992 F.2d 224 (9th Cir.1993).

---

**3.** The Texas law, section 42.0021(a) of the Texas Property Code, does not limit the amount of benefits a debtor can exempt from the bankruptcy estate, while the federal Bankruptcy Code limits the exemption to an amount "reasonably necessary for the support of the debtor." 11 U.S.C. § 522(d)(10)(E).

**4.** The exemption created by the state statute was virtually identical to those created by section 522(d)(10)(E) of the Bankruptcy Code, but that fact was not remarked upon by the Eighth Circuit.

The observations of the Eleventh Circuit in *Schlein* further explicate the relationship between ERISA and the Bankruptcy Code. As the Eleventh Circuit held:

The Bankruptcy Code was enacted as a comprehensive scheme to regulate debtor-creditor relationships after the filing of a bankruptcy petition. As part of this scheme, responsibility for defining what property debtors will take out of bankruptcy is shared with the states. ERISA, on the other hand, is a comprehensive regulatory program that governs employer-employee relations in the area of private employee benefit plans. Congress made clear that it did not want the states to interfere in this area. But as the Supreme Court has taught us, this does not mean that Congress intended ERISA preemption to ride roughshod over other areas of federal legislation, whether it be Title VII, the Bankruptcy Code, or other comprehensive federal schemes.

. . . . .

... A holding that state exemption statutes like the one involved in this case [and the one in Virginia], are preempted would alter, amend, or modify the Bankruptcy Code's provision permitting states to set exemptions and the deliberate policy choices of Congress that underlie that provision. We do not believe that Congress intended that result.

*Schlein*, 8 F.3d at 753–54 (11th Cir.1993). The reasoning in *Schlein* is sound and persuasive and is equally applicable here.

In *Pitrat,* the Ninth Circuit declined to apply the section 514(d) savings provision after concluding that preemption of the state law there at issue—an Arizona exemption virtually identical to the Florida exemption in *Schlein*—would not impair the Bankruptcy Code, because the latter could "operate in a perfectly effective manner without any state law." *Pitrat,* 947

F.2d at 429. The flaw in the *Pitrat* majority's reasoning, which is well-explained in *Schlein,* is in its "failure to accommodate or account for the policies and goals underlying the Bankruptcy Code." *Schlein,* 8 F.3d at 753. Among these is the policy that the "responsibility for defining what property debtors will take out of bankruptcy is [to be] shared with the states." *Id.* at 753. The *Schlein* court concluded: "Under the district court's circumscribed approach [which was based on *Pitrat* ], virtually all attempts by Congress to devise a federal-state partnership in a regulated area would be subject to the swing of the ERISA preemption axe. We do not believe that was what Congress intended." *Id.* Thus, the Eleventh Circuit applied section 514(d) to save the Florida exemption from ERISA preemption.

The decisions of the Fifth, Eighth and Eleventh Circuits and of Judge Sneed's dissent in *Pitrat* articulate the better view of the savings power intended by Congress in the enactment of section 514(d) of ERISA. Those decisions have recognized that the Bankruptcy Code envisioned a joint federal-state partnership in the determination of the exemptions which are appropriate to a particular locale, and thus, in 11 U.S.C. § 522(b)(2)(A), provided the states with the authority to "opt out" of the federal scheme by enacting state laws governing the availability of exemptions from a debtor's estate.

The Commonwealth of Virginia, pursuant to that authority, has elected to opt out of the federal bankruptcy scheme by enacting section 34–3.1 of the Virginia Code, which provides that:

No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of § 522 of the Bankruptcy Reform Act (Public Law 95–598), ex-

cept as may otherwise be expressly permitted under this title.

Va.Code § 34–3.1 (Michie 1996). Thus, although the federal bankruptcy provision permits exemption of a payment under a pension *"to the extent reasonably necessary* for the support of the debtor and any dependent of the debtor," 11 U.S.C. § 522(d)(10)(E) (emphasis added), Virginia has enacted an alternative exemption provision, found in section 34–34 of the Virginia Code. The state provision, like the federal one it replaces, limits the exemption of retirement benefits. However, rather than limiting the exemption to "the extent reasonably necessary for the support of the debtor" and his dependents, the Virginia law provides instead that the exemption "shall not apply to the extent that the interest of the individual in the retirement plan would provide an annual benefit in excess of $17,500." Va.Code § 34–34(C) (Michie 2000).

Congress expressed a clear intention to allow states to participate in determining what a debtor needs to emerge from bankruptcy with a fresh start. In this regard, the legislative history of the Bankruptcy Code indicates that the federal exemptions were intended to provide a modern alternative to state exemption laws, many of which were outdated at the time of the Bankruptcy Code's revision. *See In re Komet,* 104 B.R. 799, 812 (Bankr.W.D.Tex. 1989). "[R]ecognizing that circumstances are different in the various states, the [Bankruptcy] Code . . . 'permits the states to set exemption levels appropriate to the locale.'" *In re Dyke,* 943 F.2d at 1449. Given the legislative intent underlying the Bankruptcy Code, it is logical to conclude that the limit on pension plan exemptions is Virginia's attempt to set an exemption level appropriate for the Commonwealth, precisely as was envisioned by Congress when it revised the Bankruptcy Code.

Nor is there any conflict, apparent or otherwise, between the State limitation and the federal statute, which limits the pension exemption to the "extent reasonably necessary for the support of the debtor and any dependent of the debtor," 11 U.S.C. § 522(d)(10)(E), but which Virginia has opted to replace by enacting section 34–34. Thus, the Virginia statute—just like the state statutes scrutinized by the Fifth, Eighth, and Eleventh Circuits—is not inconsistent with the Bankruptcy Code: both state and federal provisions permit an individual debtor to claim a limited exemption for his retirement benefits. If this Court were to hold that ERISA preempted section 34–34 of the Virginia Code, the ability to implement and enforce the goals of the Bankruptcy Code would be impaired and modified because a state— here the Commonwealth of Virginia— would be precluded from setting appropriate exemption levels on retirement benefits even though Congress permitted it to do precisely that.

The cases cited by the Trustee do not require a different conclusion. The Trustee relies on *In re Siegel,* 105 B.R. 556 (D.Ariz.1989), in which a district court rejected the contention that preemption of a state exemption would impair the Bankruptcy Code. The *Siegel* court distinguished the Supreme Court's holding in *Shaw* by reasoning that, unlike the "intended substantial role of the states in enforcing Title VII," (which, in *Shaw,* compelled the Supreme Court to hold that preemption of state anti-discrimination laws would impair Title VII), "[t]here is no similar role of the states in enforcing either the federal bankruptcy code or ERISA plans." *Siegel,* 105 B.R. at 562.

■ Whether or not the states actually "enforce" the federal law of bankruptcy turns more on semantic distinctions than

substantive ones;[5] what is clear, however, is that the states play an important role in the joint federal-state scheme envisioned by Congress. *See, e.g., Dyke,* 943 F.2d at 1449 ("Like Title VII, the Bankruptcy Code relies on state law to assist in the implementation and enforcement of its goals."); H.R.Rep. No. 95–595, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6087 (because circumstances are different in the various states, the Bankruptcy Code "permits the States to set exemption levels appropriate to the locale"). Armed with this insight, the court in *Schlein* was correct to note the error of the reasoning in *Siegel,* namely, that court's "failure to accommodate or account for the policies and goals underlying the Bankruptcy Code." *Schlein,* 8 F.3d at 753.[6] Moreover, "[b]ecause Congress invited the states to participate in determining what [the debtor's] 'fresh start' would entail, ERISA preemption of every pension-related state exemption would substantially impair the ability of the Bankruptcy Code to ensure the envisioned 'fresh start.'" *Id.* at 752.

The Trustee's reliance on *In re Sheppard,* 106 B.R. 724 (Bankr.M.D.Fla.1989), meanwhile, is of no help because that court is bound by the Eleventh Circuit's ruling in *Schlein.* The same is true of the Trustee's reliance on *Komet,* 104 B.R. 799 (Bankr.W.D.Tex.1989), in which the court is bound by the Fifth Circuit's ruling in *Dyke,* 943 F.2d 1435 (5th Cir.1991), discussed *supra.* In any event, unlike *Siegel* and *Komet,* the logic of *Dyke* and *Schlein* is consistent with the federal bankruptcy scheme and with the articulated intent of Congress to give states an important role in the exemption process.

For the foregoing reasons, section 514(d) of ERISA saves section 34–34 of the Virginia Code from the preemptive effect of section 514(a).

## CONCLUSION

For the foregoing reasons, it is appropriate to affirm the decisions of the Bankruptcy Court that (1) Mr. Bottoms' interest in the IRA was part of the Debtors' estate and (2) section 34–34 of the Virginia Code, even if theoretically preempted by section 514(a) of ERISA, is saved from preemption by section 514(d) of ERISA.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

---

5. *Compare Dyke,* 943 F.2d at 1449 ("Like Title VII, the Bankruptcy Code relies on state law to assist in the implementation and *enforcement* of its goals") (emphasis added) *with Siegel,* 105 B.R. at 562 ("There is *no* similar role of the states in *enforcing* either the federal bankruptcy code or ERISA plans") (emphasis added).

6. Indeed, *Siegel* appears to have exalted ERISA's purpose of "establishing uniform regulation" while neglecting the equally-important principles of federal-state cooperation which motivated Congress to permit states to opt out of the federal schedule of exemptions set forth in ERISA. Thus, the *Siegel* court noted: "Appellants' argument essentially presumes that the congressional intent in § 522 was to permit states to decide whether to provide exemptions for ERISA plans. This is patently incorrect in view of the purpose of ERISA to establish uniform regulation." *Siegel,* 105 B.R. at 562. In *Siegel,* however, the Arizona law at issue, A.R.S. § 33–1126(B), clearly provided for exemption of assets payable to a beneficiary of a retirement plan; had it not, the conflict between the state and federal laws would have been obvious. Under such a scenario, preemption of the Arizona state law by section 514(a) of ERISA would have followed, since it would be facially implausible to argue that section 514(d) required preservation of a state law which conflicted with the federal enforcement scheme.

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that the decisions of the United States Bankruptcy Court are affirmed.

The Clerk is directed to send a copy of this Order to all counsel of record.

It is so ORDERED.