**In re Junior Fay LADD, and Sa-aune Ladd, Debtors.**

No. 00–41827–PNS3.

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

Feb. 6, 2001.

Jill Crew, Ft. Walton Beach, FL, for Debtor.

Sherry Chancellor, Pensacola, FL, for Trustee.

### ORDER OVERRULING TRUSTEE'S OBJECTION TO EXEMPTION AND DENYING MOTION FOR TURNOVER OF PROPERTY

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS CASE came before the Court on January 25th 2001 for hearing of the Chapter 7 Trustee's Objection to Exemption and Motion for Turnover of Property to the Trustee. The issue in this case is whether exempt funds from a 401(k) distribution lose their exempt status when placed into a segregated checking account.

The Court, having reviewed the Trustee's Objection and Motion, the Debtor's Memorandum of Opposition, and the argument of counsel, overrules the Trustee's Objection, and denies the Trustee's Motion. The 401(k) proceeds retain their exempt status, and they do not have to be turned over to the trustee. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052.

**Factual and Procedural History**

Junior Fay Ladd's employment with Hornaby Truck Lines terminated June 30, 2000, after almost 6 years with the company. His qualified 401(k) plan required distribution of the account within 60 days after the end of his employment. The proceeds were placed in Mr. Ladd's personal checking account, separate from a joint account and his wife's personal account. Mr. Ladd and his wife, Sa-aune Ladd, filed a voluntary Chapter 7 petition on September 5, 2000. Their Schedule C claimed $2900.00 in the husband's personal checking account as the exempt proceeds of the 401(k) plan cash-out. The Trustee objected the to claimed exemption, and motioned for turnover of the money.

**Discussion**

 The commencement of a bankruptcy case creates an estate consisting of all the debtor's property, as defined in section 541 of the Bankruptcy Code. A debtor may exempt property from the bankruptcy estate by claiming exemptions authorized by section 522 of the Code. States may opt out of the exemption schedule of the Code, and limit a debtor's rights to those permitted under the state's exemption plan. 11 U.S.C. § 522(b). Florida Statute § 222.20 opts out of the Code's exemption scheme described in 11 U.S.C. § 522(d), favoring the state law exemption schedule. However, F.S. § 222.201 permits debtors to claim the exemptions listed in 11 U.S.C. § 522(d)(10). A qualified 401(k) plan is exempt under the Code via section 522(d)(10)(E), and under Florida Statute § 222.21(2)(a) as follows:

Except as provided in paragraph (b), any money or other assets payable to a participant or beneficiary from, or any interest of any participant of beneficiary in, a retirement or profit-sharing plan that is qualified under § 401(a), § 403(a), § 403(b), § 408, § 408A, or § 409 of the Internal Revenue Code of 1986, as amended, is exempt from all claims of creditors of the beneficiary or participant.

F.S. § 222.21(2)(a). This exemption provides protection, from both state law creditors and the bankruptcy process, for the money in the plan, and for the interest of a participant in or beneficiary of the plan.

 Qualified 401(k) plans are required to completely pay out benefits to plan participants no later than 60 days following the termination of employment, unless the plan participant elects otherwise. 26 U.S.C. § 401(a)(14). Plan participants may avoid the income tax consequences of an early distribution by rolling the money over, into another qualified plan, as set forth in section 402 of the IRS Code. While prematurely distributed benefits that do not roll over into another qualified plan may be subject to income taxes, there is no provision in the IRS Code, the Bankruptcy Code, or Florida Statute that strips the exempt status of the plan proceeds with regard to creditors other than the IRS.

If the Debtor's plan was qualified, the proceeds were received by the Debtor as a mandatory distribution. Regardless of the tax status of those proceeds, they would be exempt from creditors under F.S. § 222.21(2)(a), and would be exempt from the bankruptcy estate under 11 U.S.C. § 522(d)(10)(E). The Trustee did not attack the qualification status of the 401(k) plan. Instead, she offered the legal argument that the plan proceeds lost their exempt status when they left the confines of the 401(k) plan, and were deposited into a checking account.

The preservation of the Florida exemptions in the bankruptcy arena is well documented in the case law. In *In re Benedict*, 88 B.R. 390 (Bankr.M.D.Fla.1988), Judge Proctor examined the exempt status of the proceeds of an annuity arising from a personal injury settlement. He held that the exemption contained in F.S. § 222.14 exempted the proceeds of the annuity contract from legal process, and that such traceable funds, when deposited into a bank account, retained their exempt status. 88 B.R. at 393. In *In re Fraley*, 148 B.R. 635 (Bankr.M.D.Fla.1992), the Court analyzed the exempt status of the proceeds of a lump sum settlement in a workers' compensation case. Citing to the exemption contained in F.S. § 440.22, he held that those traceable lump sum proceeds retained their exempt status when deposited in a bank account. 148 B.R. at 637. The same conclusion was reached with regard to a traceable workers' compensation lump sum settlement converted into a certificate of deposit, even though the traceable funds had been commingled with other funds in the creation of the CD. *See In re Green*, 178 B.R. 533 (Bankr.M.D.Fla.1995).

In *In re Hickox*, 215 B.R. 257 (Bankr. M.D.Fla.1997), the debtor claimed an exemption for a traceable termination distribution from a qualified 401(k) plan into an IRA. In fact, the 401(k) disbursal first went into the debtor's checking account. Then, it was partially diverted into her mother's money market account. It was finally rolled over into an IRA, using a certificate of deposit listed in the debtor's name. Again, the Court held that the traceable portion of the 401(k) distribution retained its exempt status.

In each of the cited cases, traceable exempt funds maintained their exempt status regardless of the investment vehicle carrying the proceeds. The law with regard to the exempt status of funds flowing from a qualified 401(k) plan is clear, and it is directly opposite the Trustee's view. If the retirement plan bearing the distribution was qualified under the IRS Code, then the monies paid from the plan are exempt, despite their deposit into a checking account.

## Conclusion

A claimed exemption is "presumptively valid." 9 Collier on Bankruptcy, ¶ 4003.04 (15th ed. *rev.* 1998); *In re Patterson*, 128 B.R. 737, 740 (Bankr. W.D.Tex.1991). A party objecting to a debtor's exemptions has the burden of proving that the exemption is not properly claimed. Fed.R.Bankr.P. 4003(c); *In re Jackson*, 169 B.R. 742 (Bankr.N.D.Fla. 1994).

The Trustee did not challenge the qualification of the Debtor's 401(k) plan. She did not allege a lack of traceability of regarding the proceeds. When the trustee challenged the exempt status of the funds, she bore the burden of proving that the plan was unqualified, or that the funds were untraceable. The Trustee did not raise factual issues that she could have raised to challenge the exempt status of the money as it entered and left the plan. Instead, the Trustee raised an unsupported issue of law regarding the location of the exempt funds. The Debtor responded to the trustee's objection, supported by a memorandum of law. The trustee did not respond to the Debtor's memo, nor did she cite any contrary authority at the hearing.

The fact that the traceable 401(k) proceeds were placed into a checking account has no bearing on the exempt status of those funds. Therefore, it is ORDERED AND ADJUDGED that:

1) The Trustee's objection to the Debtor's exemption of $2900.00 arising from a mandatory distribution from his 401(k) plan is OVERRULED.

2) The Trustee's motion for turnover of those funds is DENIED.