**In re Charleen MCCOLLUM and Harold McCollum, Debtors.**

No. 02–42986–293.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Aug. 29, 2002.

Steven K. Brown, St. Louis, MO, for Debtors.

A. Thomas DeWoskin, Danna McKitrick, P.C., St. Louis, MO, for trustee.

Fredrich J. Cruse, The Cruse Law Firm, Hannibal, MO, Chapter 7 Trustee.

## MEMORANDUM OPINION

DAVID P. MCDONALD, Chief Judge.

In February 2002, Debtor Charleen McCollum withdrew all of her money from her federal retirement account and placed it into a money market savings account. Several weeks later she and her husband filed for relief under Chapter 7 of the Bankruptcy Code. In their schedules the McCollums claimed an exemption for the proceeds from the retirement account. Trustee objected to the exemption because the proceeds were no longer in a qualified retirement account at the time that the McCollums filed for bankruptcy relief. The Court finds that the retirement plan proceeds did not qualify as exempt property at the time the McCollums filed their petition. Consequently, Trustee's objection to the exemption will be sustained.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(B), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409.

## PROCEDURAL BACKGROUND

On March 18, 2002, Debtors Charlene and Harold McCollum filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330. The McCollums claimed an exemption of Charlene's federal retirement account. Charlene had received all the funds from that account before filing for bankruptcy. On April 24, 2002, the meeting of creditors was held and concluded. Trustee questioned the McCollums about their scheduled exemption of the proceeds of Charlene's federal retirement account. Trustee filed an objection to that exemption on July 2, 2002. The parties agreed to submit the matter to the Court through briefs. The last brief was filed on August 19, 2002.

## DISCUSSION

■ The following facts are undisputed and were submitted by the parties in their briefs. Debtor Harold McCollum is 61 years old and became totally disabled in June 2000. He ceased his self employment as a shoe repairman at that time.

He has not worked since and is currently receiving disability benefits from the Social Security Administration. Debtor Charlene McCollum is 59 years old and is Harold's spouse. On October 10, 2001, she lost her job as an accounts receivable clerk with Cardinal Building Materials Company.

The McCollums had previously filed a Chapter 13 bankruptcy in July 1999. Making their plan payments became very difficult with the loss of Charlene's job. Consequently, their Chapter 13 case was voluntarily dismissed on February 7, 2002. In need of money to pay bills, Charlene opted to cash in her entire retirement account which was established from her previous employment with the federal government. In late February 2002, Charlene received $23,802.13[1] from the retirement account and placed the money into a money market savings account.

Several weeks later the McCollums filed a Chapter 7 bankruptcy on March 18, 2002. The McCollums listed Charlene's federal retirement account, which had already been withdrawn, as personal property in Schedule B.[2] In Schedule C they claimed Charlene's retirement account as exempt under R.S.Mo. § 513.430(10)(e). On the date that the McCollums filed their Chapter 7 petition only $18,507.71 remained of Charlene's retirement account proceeds. By the time the McCollums were questioned by Trustee at the meeting of creditors on April 24, 2002, the proceeds had been reduced to approximately $13,000.00. The McCollums had been using the proceeds to pay various bills.

On June 20, 2002, the McCollums filed amended schedules. Their amended Schedule B claimed $18,507.71 as the value

of Charlene's federal retirement account (that was the balance the McCollums still had on the date that their petition was filed). As of the date of the meeting of creditors the remaining balance of the retirement account proceeds was $13,000.00. The $13,000.00 was transferred to six IRA accounts on May 24, 2002, one month after the Trustee inquired about the retirement fund distribution at the creditor's meeting.

On July 7, 2002, Trustee filed an objection to the McCollums' claimed exemption of the $18,507.71 in proceeds from Charlene's retirement fund. Trustee contends that because Charlene received all of the funds from her federal retirement account before she filed for bankruptcy, the funds are not exempt under Missouri law. The McCollums argue that because the fund proceeds can be traced to a retirement fund they qualify as exempt property.

### Exemption of pension funds

■ Section 11 U.S.C. § 522(b) of the Bankruptcy Code allows an individual debtor to exempt certain property of the estate. The general rule is that if property exempted by statute is exchanged for property not covered by any applicable exemption statute, the exemption is lost. *See, e.g., In re Ehrich,* 110 B.R. 424, 429 (Bankr.D.Minn.1990) (stating general rule that "where an exemption is based on the character of property, the cash proceeds of that property, or property with a different character which is purchased with such proceeds, does not enjoy a derivative exemption").

The Bankruptcy Code provides an exemption scheme in section 522(d) through which debtors may exempt enumerated property from the estate. The Code also

---

1. Curiously the refund notice that the U.S. Office of Personnel Management sent Charlene stated that her refund would be $25,802.13. This difference is not explained in the briefs.

2. The McCollums listed the value of the fund as $27,000.00 and claimed an exemption in Schedule C in the same amount.

allows a state to opt out of this scheme and establish its own. Missouri chose to opt out and allows debtors domiciled in Missouri to exempt from property of the estate any property that is exempt from attachment and execution under Missouri state law. The relevant Missouri statute for an exemption of pension benefits is R.S.Mo. § 513.430(10)(e). That statute states that:

> The following property shall be exempt from attachment and execution to the extent of any person's interest therein: ... (10) Such person's **right to receive:** ... (e) Any payment under a stock bonus plan, pension plan, disability or death benefit plan, profit-sharing plan, nonpublic retirement plan or any similar plan described, defined, or established pursuant to section 456.072, R.S.Mo., the person's right to a participant account in any deferred compensation program offered by the state of Missouri or any of its political subdivisions, or any annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of such person and any dependent of such person ....

R.S.Mo. § 513.430(10)(e)(emphasis added).

The language of Missouri's statute was modeled after the similar exemption in section 522(d)(10)(E) of the Bankruptcy Code which provides that: "(d) The following property may be exempted ... (10) The debtor's **right to receive** ... (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan ...."

The key phrase in these statutes is the "right to receive" a benefit. Whether the McCollums can exempt the funds received from Charlene's retirement account depends on the interpretation of that phrase.

The "right to receive" a benefit has been deemed to have been extinguished when payments or benefits have already been received by a debtor before the bankruptcy case was commenced. A case dealing with the Missouri exemption was considered in *In re McGoy*, 86 B.R. 174 (Bankr. E.D.Mo.1988). In that case a debtor received stock before filing for bankruptcy relief. The court held that the debtor no longer had a "right to receive" the stock because the right to receive had already been exercised. *Id.* at 176. The court found that as a matter of law the "right to receive" terminates upon receipt. *Id.* Therefore, the stock received pre-petition did not qualify for an exemption under R.S.Mo. § 513.430(10)(e).

The relevant federal statute was considered in *In re Cesare*, 170 B.R. 37 (Bankr. D.Conn.1994). In that case a debtor transferred the balance of his employment pension fund to an IRA four months before he filed for bankruptcy relief. The court held that the debtor could not exempt those funds as employment pension funds under 11 U.S.C. § 522(d)(10)(E) because the qualification of the "right to receive" in the statute had been extinguished when the debtor actually received the lump sum distribution from his employer's pension plan. *Id.* at 39. Under the plain language of section 522(d)(10)(E) any funds due a debtor under such a plan or contract lose their exempt character once the debtor receives the funds. *Id.*

The *Cesare* court bolstered its ruling by comparing the language of section 522(d)(10) with section 522(d)(11). Section 522(d)(10) exempts only the debtor's right to receive certain property. Section 522(d)(11) exempts both a debtor's right to receive property enumerated by the statute as well as "property that is traceable to" such property. *Id.* Had Congress intended to allow an exemption for the proceeds traceable to the property enumerated in section 522(d)(10), it clearly could

have done so. The difference in the language of sections 522(d)(10) and 522(d)(11) demonstrate Congress's intent not to allow an exemption under 522(d)(10) for proceeds received by the debtor before the commencement of his bankruptcy case which are traceable to a qualified retirement fund.

The court in *In re Chapman* reached the same conclusion in analyzing the status of a debtor's pre-petition receipt of disability benefits. 177 B.R. 161 (Bankr.D.Conn. 1994) (disability benefits received by a debtor nine days before he filed his bankruptcy petition did not qualify as an exempt benefit under 11 U.S.C. § 522(d)(10)(C)).

The McCollums offer the case of *In re Donaghy*, 11 B.R. 677 (Bankr.S.D.N.Y. 1981) in support of their position that a debtor's retirement benefits, that would normally qualify for an exemption under 11 U.S.C. § 522(d)(10)(E), can still be exempt even though the funds were received before the petition date. In *Donaghy* the debtors received $21,992.87 in pension benefits three weeks before they filed their petition for relief. The debtors were in their early sixties and the wife had accumulated large medical bills. The court, using its equitable powers, interpreted the intent of Congress regarding exemptions and allowed the funds received before the petition date to be exempt because they were "a tangible reflection" of the right to receive payment under 522(d)(10)(E). *Id.* at 680.

While the Court appreciates the holding in *Donaghy* and the McCollums' present predicament, it finds that the holdings in *McGoy, Cesare,* and *Chapman* are the correct standard in analyzing exemptions under R.S.Mo. § 513.430(10)(e) and section 522(d)(10)(E) of the Bankruptcy Code. The plain language of section 522(d)(10)(E) states that any funds due a debtor under

an exempt pension plan or contract lose their exempt character once the debtor receives the funds. *In re Cesare,* 170 B.R. at 39. As a matter of law the "right to receive" under R.S.Mo. § 513.430(10)(e) terminates upon receipt of the enumerated property. *In re McGoy,* 86 B.R. at 176.

In addition, like their federal counterparts, R.S.Mo. § 513.430(10) and § 513.430(11) distinguish between an exemption for a "right to receive" (§ 513.430(10)) and an exemption for a "right to receive, or property that is traceable to" enumerated property (§ 513.420(11)). Such a distinction demonstrates the Missouri legislature's ability to allow an exemption for funds which are not exempt on their face but which can be traced to exemptible sources. The Missouri legislature chose not to allow tracing to funds that were received pre-petition which otherwise might have been exempt under section 513.430(10)(e).

The *McGoy* court suggested that the decision to allow an exemption in *Donaghy* was driven by the use of the court's equitable powers. *McGoy,* 86 B.R. at 176 (as a matter of equity the bankruptcy court is charged with the responsibility of interpreting the Congressional intent of statutes). However, in a decision decided shortly before *McGoy,* the Supreme Court of the United States held that a bankruptcy court does not have unfettered powers of equity. A bankruptcy court's use of its equitable powers is constrained by the provisions of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"). The plain meaning of the phrase "right to receive" in R.S.Mo. § 513.430(10)(e) and 11 U.S.C. § 522(d)(10)(E) precludes the Court from

using its equitable powers to construe the phrase to encompass funds already received pre-petition. The Court's equitable powers do not allow the Court to ignore the plain language of the Code and of Missouri law.

In an understandable attempt to prevent Trustee from obtaining the remaining proceeds of Charlene's federal retirement account, the McCollums assert that Charlene still has an option under federal law that would shelter the funds from Trustee's collection effort. They assert that the Federal Erroneous Retirement Coverage Corrections Act (FERCCA) allows federal employees who were in the wrong retirement plan to chose another plan. An election to seek a change must be made by September 19, 2002. Nothing in the record indicates that Charlene participated in the wrong retirement plan. The issue before the Court is not Charlene's choice of retirement plans, rather, it is her election to liquidate the plan that she was in and the effect of that decision on an exemption in bankruptcy. Therefore, the existence of the FERCCA does not effect the analysis of this case.

■ Finally, the McCollums argue that because the Chapter 13 Trustee treated Charlene's federal retirement account as exempt during the pendency of that filing, the Chapter 7 Trustee should be estopped from challenging the exemption of the proceeds from the account in the present case. The Court declines to make such a ruling for two reasons. First, the McCollums fail to cite any authority to support their proposition that a trustee's position in a Chapter 13 case should be binding on a trustee assigned to a subsequent Chapter 7 filing. Second, the nature of Charlene's interest in her federal retirement account actually changed from the one case to the other. In her Chapter 13 case her federal retirement account was still in existence and any

funds in the account were clearly exempt as money that she had a right to receive. When she filed her Chapter 7 petition Charlene had already closed her retirement account and received the proceeds. She no longer had any right to receive any money from her retirement account.

Although the Court empathizes with the harsh result of Charlene's premature withdrawal of her retirement account, the Court finds, as a matter of law, that her pre-petition receipt of the proceeds from her account extinguished any claim to an exemption of those proceeds. Accordingly, the Court will sustain Trustee's objection to the McCollums' claimed exemption of Charlene's federal retirement account.

An Order consistent with this Memorandum Opinion will be entered this date.