**In re Virginia Mary GIBSON, Debtor.**

**Michael G. Wolff,**

v.

**Virginia Mary Gibson.**

**No. CIV.A. DKC 2003–2462.**

United States District Court, D. Maryland.

Nov. 5, 2003.

Jeffrey M. Orenstein, Goren Wolff Orenstein, LLC, Rockville, MD, for Appellant.

Ronald Jay Drescher, Drescher and Associates PA, Baltimore, MD, for Appellee.

## MEMORANDUM OPINION

CHASANOW, District Judge.

This case is before the court on appeal from the order of Bankruptcy Judge Duncan W. Keir, overruling Trustee's Objection to the Debtor's Amended Scheduled Exemptions. Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Bankr.Rule 8012. For the reasons that follow, the court will affirm the bankruptcy court's order overruling the Trustee's objection.

## I. Background

The following facts are undisputed. On April 11, 2003, Debtor/Appellee Virginia Mary Gibson filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code. Eight days later, Appellee voluntarily converted her case to Chapter 7. Prior to filing for bankruptcy protection, Appellee made contributions to an employee 401(k) plan or similar tax deferred retirement program through her employment. On March 31, 2003, Appellee withdrew $29,000 under circumstances in which she could legally roll over the money to an Individual Retirement Account ("IRA") within 60 days. The funds were deposited directly from the retirement plan into an account the Appellee held at the FRB Federal Credit Union.

As part of her bankruptcy case, Appellee's credit union account was listed on an Amended Schedule B with a market value of approximately $25,000. Appellee also filed an Amended Schedule C in which she sought to exempt from the estate the funds withdrawn from her retirement account. The exemption amounts were: $20,000 under 11–504(h); $2,500 under 11–504(f); and $3,000 under 11–504(b)(5). The Trustee objected to Appellee's claimed exemption of $20,000 under § 11–504(h) of the Bankruptcy Code on the ground that Appellee had not rolled the funds into an IRA at the time she filed her bankruptcy petition. After conducting a hearing, the bankruptcy court ruled that the funds were exempt, as long as they were re-deposited into a qualified retirement account within 60 days from the date of withdrawal from Appellee's retirement account. By Interim Order of the Bankruptcy Court, the Trustee turned the funds over to Appellee in the form of two checks, one in the amount of $5,500 and the other in the amount of $19,275. Before the 60-day time period expired, Appellee deposited the latter amount into an IRA at SunTrust Bank, a qualified plan within the meaning of § 11–504(b). The bankruptcy court entered a final order by which the Trustee's objections were overruled. Appealing that order, Appellant now raises the issue of whether the bankruptcy court erred in determining that the Appellee was able to exempt funds held in a non-retirement bank account pursuant to § 11–504(h).

## II. Standard of Review

The district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *In re Kielisch*, 258 F.3d 315, 319 (4th Cir.2001). Because the bankruptcy court's order overruling the Trustee's exemption was a conclusion of law and not based upon any factual findings, the court will review its order *de novo*.

## III. Analysis

The issue before the court is whether funds withdrawn from a qualified

retirement plan are entitled to exemption status when not rolled into another qualified retirement plan until after the filing date of a bankruptcy petition.[1] Appellant Trustee argues that, at the time Appellee filed her petition, the funds had not been rolled into an IRA and were therefore no longer entitled to an exemption. Appellant contends that the bankruptcy court erred when it held that the funds were entitled to creditor exemption status while the 60–day grace period afforded under the Internal Revenue Code remained open.

Despite Appellant's arguments, the question for the court is not, as Appellant argues, whether the funds lost their exemption status by being deposited into a non-qualified account. Rather, the issue is whether the funds were entitled to the same protection from creditors in bankruptcy as that afforded outside bankruptcy under the Internal Revenue Code. Upon a review of the record and the applicable legal standards, the court finds that the bankruptcy court's decision was legally correct and, therefore, will be affirmed.

**Exemption of Pension Plans**

█ Filing a bankruptcy petition creates an estate "comprised of all of the debtor's legal and beneficial interests in property." *In re Mueller*, 256 B.R. 445, 451 (Bankr.D.Md.2000). The Bankruptcy Code allows an individual debtor to exempt certain property of the estate and provides an exemption schedule enumerating property entitled to exemption. *See* 11 U.S.C. § § 522(b)(1), 522(d). The Code also al-

lows a state to opt out of this federal exemption scheme and establish its own. *See* 11 U.S.C. § 522(b)(2). Maryland is one of the many states that have opted out of the federal scheme; as a result, debtors who file bankruptcy petitions in Maryland may only claim exemptions afforded under state law. *See* Md.Code Ann., Cts. and Jud. Proc. § 11–504(g) (2002 Repl.Vol.). Maryland exemptions are to be construed liberally to effect the purpose for which they were enacted. *See In re Hurst*, 239 B.R. 89, 91 (Bankr.Md.1999) (citing *Muhr v. Pinover*, 67 Md. 480, 480, 10 A. 289 (1887)).

The applicable state exemption provision in this case, Md. Cts. & Jud. Proc.Code Ann. § 11–504(h), provides that:

> any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan qualified under § 408 ... of the United States Internal Revenue Code ... shall be exempt from any and all claims of the creditors of the beneficiary or participant.

The language and application of the Maryland exemption scheme is broader than that of the federal exemption scheme. *See* 11 U.S.C. § 522(b) (exempting the "debtor's *right to receive* a payment under a ... pension [or similar plan]") (emphasis added). Moreover, although it contains no explicit dollar limit, this exemption is limited to the tax deductible portion of the contribution into a qualified retirement plan. *See* Md. Ann.Code, Cts & Jud.

---

1. Appellant also urges the court to consider the factual evidence regarding Appellee Gibson's intention when withdrawing the funds. Appellant argues that Appellee had no intention of rolling the funds into an IRA at the time of withdrawal and, therefore, should not be entitled to claim an exemption simply because the 60 day grace period had not yet expired. Under the language of § 11–504(h), however, there is room for a debtor's intent to play any role in determining whether an exemption is available. Furthermore, as the bankruptcy court observed, this argument makes little sense when applied to contrasting factual situations. *See* Paper 3, ex. 1 at 17–18. Thus, as the court's determination regarding the availability of an exemption under § 11–504(h) is one of law, and not one of fact, the court will not address Appellant's arguments concerning Debtor's intent.

Proc., § 11–504(h)(4) (2002 Repl.Vol.). Thus, following the federal government's treatment of pension plans outside bankruptcy, the Maryland legislature has allowed a debtor to exempt contributions into a qualified plan up to the amount deductible under the United States Internal Revenue Code.

▇ To determine whether an asset is exempt from bankruptcy creditors, the courts will look to the treatment of the property outside the bankruptcy proceeding. *See In re Mueller*, 256 B.R. at 451 ("To be exempt from the claims of creditors in bankruptcy, assets must be exempt from the claims of creditors outside of bankruptcy."); *see also In re Solomon*, 67 F.3d 1128, 1133 (4th Cir.1995) (in finding IRAs exempt in bankruptcy, "[o]ur holding today is consistent with the treatment accorded IRAs by the Internal Revenue Code.") Pursuant to the Internal Revenue Code, funds withdrawn from a qualified pension plan, like Appellee's employee retirement plan, are entitled to tax exempt status for a period of 60 days. *See* 26 U.S.C. § 402(c); 26 U.S.C. § 402(c)(3)(A). If, within 60 days, the funds are rolled into another qualified plan, like the IRA Appellee ultimately established, the tax exempt status remains intact. If the funds are not rolled over within this time period, the property loses its tax exempt status. By enacting this tax protection scheme, Congress was supporting its "deep and continuing interest in the preservation of pension plans, and in encouraging retirement saving." *See Solomon*, 67 F.3d at 1133. The Maryland legislature has expressed a similar desire to protect an individual's retirement interest by extending the pro-

tection available to IRAs under the Internal Revenue Code to IRAs in bankruptcy. *Id.*

Neither party disputes that the two retirement plans at issue in this case generally qualify as exempt from creditors in a bankruptcy proceeding under § 11–504(h). *See Solomon*, 67 F.3d at 1133 (exempting from creditors' reach IRA plans and finding such a holding consistent with the provisions of the Internal Revenue Code). The parties do dispute, however, whether the funds withdrawn from a qualified plan and deposited into a checking account retained their exempt status throughout the 60–day grace period granted under the Internal Revenue Code.

▇ Appellant cites a number of cases standing for the proposition that a debtor's entitlement to claim an exemption for retirement funds in bankruptcy expires immediately upon distribution of the funds. These cases, however, do not involve an exemption scheme like the one in effect in Maryland. Section 11–504(h) exempts "money payable from" and "any interest in" a retirement plan. This exemption provision is broader than the federal exemption scheme, which provides exemption protection to an individual's "right to receive" and has been interpreted as terminating immediately upon distribution or receipt of the funds. *See In re Cesare*, 170 B.R. 37 (Bankr.D.Conn.1994).[2] By opting out of the federal scheme and utilizing the broader terms "money payable" and "interest in," the Maryland legislature has indicated an intent to protect retirement funds in a bankruptcy proceeding to a greater degree than available under the

---

**2.** Appellant also cites two other cases that are inapposite: *In re McCollum*, 287 B.R. 750 (Bankr.E.D.Mo.2002) (examining a Missouri exemption scheme modeled after the federal "right to receive" exemption) and *Phillips v. Bottoms*, 260 B.R. 393 (E.D.Va.2000) (case did not involve the federal exemption scheme, or one similarly modeled. Instead, it focused not on whether an exemption was permitted, but whether the state-created exemption was preempted by federal law.)

federal law. In fact, upon reviewing the language of § 11–504, Maryland courts have read the term "money payable" to include funds "in the hands" of the debtor. *See In re Kleinman,* 274 B.R. 171 (Bankr. D.Md.2002). In *Kleinman,* the court applied this reasoning to find the debtors entitled to an exemption under 11–504(b)(2) for funds already distributed and received. *See id.* at 172 (citing *In re Howland,* 27 B.R. 896 (Bankr.D.Md.1983)). Additionally, a Florida bankruptcy court addressed a factually similar situation arising under the Florida exemption scheme, which also contained the phrases "money payable" and "interest in." *See In re Ladd,* 258 B.R. 824 (Bankr.N.D.Fl.2001). In *Ladd,* the bankruptcy court was asked to determine whether 401(k) proceeds retained their exempt status, despite being deposited into a checking account at the time a bankruptcy petition was filed. Under an exemption scheme almost identical to the Maryland scheme, the court maintained the exempt status of traceable exempt funds "regardless of the investment vehicle carrying the proceeds." *Id.* at 827. Thus, the court held that the money paid from the retirement plan did not lose its exempt status despite having been deposited into a regular checking account.

Finally, the bankruptcy court's ruling upholding the funds' exemption until the expiration of the 60–day period supports the purpose behind pension and retirement plans: to ensure that workers have sufficient funds with which to support themselves and their dependents during their retirement years. *See Solomon,* 67 F.3d at 1133. As courts have recognized: "Congress has expressed a deep and continuing interest in the preservation of pension plans, and in encouraging retirement savings, as reflected in the statutes which have given us ERISA, Keogh plans and IRAs." *Id.* (quoting *Velis v. Kardanis,* 949 F.2d 78, 82 (3d Cir.1991)); *see also Hick-*

*man v. Hanover,* 33 F.2d 873, 874 (4th Cir.1929) ("[S]tatutes should receive a liberal construction in favor of the debtor in order to advance the humane purpose of preserving to the unfortunate or improvident debtor or his family the means of obtaining a livelihood and prevent them from becoming a charge upon the public.").

Given the language and purpose of § 11–504(h), this court finds that the exemption status of Appellee's qualified retirement plan did not expire immediately upon distribution, but rather remained in effect pending a rollover into an IRA within the 60–day time period allocated under the Internal Revenue Code.

## IV. Conclusion

Based on the foregoing reasons, the judgment of the bankruptcy court is affirmed. A separate order will follow.